**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

PATRISHA JONES,

       Plaintiff,

vs.                                          No. CIV-03-00362   JB/LAM

DEPUTY R. HUNT and DETECTIVE
DANNY SANDOVAL, in their individual
and official capacities, the SANDOVAL
COUNTY BOARD OF COMMISSIONERS,
and ALFRED HABERMAN, in his individual
capacity,

       Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on Defendant Alfred Haberman's Motion to Dismiss on the Basis of Qualified Immunity, filed July 8, 2003 (Doc. 13).  The primary issue is whether Haberman's meeting with Plaintiff Patrisha Jones, under the circumstances alleged in the First Amended Complaint ("Complaint"), was an unreasonable seizure in violation of the Fourth Amendment.  Because the Court finds that the Complaint does not sufficiently allege that Haberman unreasonably seized Jones in violation of the Fourth Amendment, and that, at the time of the alleged detention, the law was not clearly established such that a reasonable social worker should have known that such detention was in violation of the Fourth Amendment, Haberman is entitled to qualified immunity, and the Court will grant his motion to dismiss.

<u>**FACTUAL BACKGROUND**</u>

Jones alleges that Haberman was a Social Worker Supervisor for the New Mexico Children Youth, and Families Department ("CYFD"), and that at all times material he was acting under color

of law and within the course and scope of his employment. See Complaint ¶ 6, at 2. Jones alleges that, at all times material, she was a junior at Bernalillo High School. See id. ¶ 7, at 2. She began living with her father and stepmother in 1997. See id. ¶ 10, at 3.

Jones alleges that, on November 2, 2002, her father and stepmother "struck her," causing minor bruising and a minor cut. Id. ¶ 14, at 3. On November 5, 2002, an officer at the school noticed that Jones had scratches on her neck and collarbone, and a bruise on the left side of her face. See id. ¶ 17, at 3. On November 7, 2002, Jones discussed legal emancipation with school officials, during the course of which she disclosed the November 2, 2002 incident. See id. ¶ 18, at 3.

As a result of Jones' disclosure, Haberman and Defendant R. Hunt, Deputy Sheriff of Sandoval County, became involved in this matter, evidently pursuant to the New Mexico Abuse and Neglect Act, NMSA 1978 §§ 32A-4-1 to 32A-4-33. See Complaint ¶ 19, at 4; Defendant Haberman's Answer to Plaintiff's First Amended Complaint ¶ 6, at 2, filed July 8, 2003 (Doc. 12)(admitting that Haberman "acted within the course and scope of his employment . . . ."). Hunt and Haberman turned Jones over to the custody of her older, adult sister. See Complaint ¶ 20, at 4. Jones did not want to live with her father and stepmother, and her father made no effort to bring her back to live with him. See id. ¶ 22, at 4.

In January 2003, at the start of the spring semester, Jones moved in with her mother. See id. ¶ 24, at 4. Her mother filed for a protective order on her daughter's behalf and obtained, on January 8, 2003, a "Temporary Order of Protection and Order to Appear" ("TRO") against Jones' father under the New Mexico Family Violence Protection Act, §§ 40-13-1 to 40-13-8. See id. ¶¶ 25-26, 29, at 4-5. The TRO was based on the incident that had occurred on November 2, 2002. See id. ¶ 27, at 4.

According to the allegations of Jones' Complaint, when Jones' father received the TRO, he and Jones' stepmother met with Hunt on January 10, 2002.  See id. ¶¶ 32-33, at 5.  Hunt then called the state district court, and reported that officials had investigated the allegations in the mother's petition and learned that they were "unfounded."  Id. ¶ 34, at 5.  After the meeting with Jones' father and stepmother, Hunt and Haberman went to Bernalillo High School, and told Jones that she could not live with her mother, and that she could either live with her father or at a shelter home.  See id. ¶¶ 35-36, at 5.

Jones alleges that, after Hunt and Haberman left the high school, she became upset.  See id. ¶ 37, at 5.  She threatened to kill herself if she could not live with her mother.  See id.  The school resource officer referred Jones to a male counselor who knew her.  See id. ¶ 37, at 5.  Hunt and Haberman later returned to the school and met Jones in the counselor's office.  See id. ¶ 39, at 6.

Jones alleges that, over the next several hours, Hunt and Haberman "harassed, belittled, threatened, and intimidated" her.  Id. ¶ 40, at 6.  The counselor at some point had to leave, after which time Hunt and Haberman continued the harassment.  See id. ¶¶ 42-43, at 6.  Hunt and Haberman told her that, if she did not return to live with her father, Hunt would arrest her and throw her in jail; that her "life would be hell"; that "we'll be your shadow until you're eighteen, and maybe longer"; that her mother was a bad person and a bad mother; that they would see that her mother was sent to prison; that there was a "zero percent" chance that she would live with her mother; and that maybe she and her mother would be "cell mates."  Id. ¶ 43, at 6.  Jones was terrified of Hunt and Haberman, and afraid that she would be arrested.  See id. ¶ 44, at 6.  Jones alleges that she did not dare challenge them for fear that Hunt would follow through with his threat.  See id.  Finally, Jones' father and stepmother came to the school and took her to their home.  See id. ¶ 45, at 7.

On January 22, 2003, the state district court held a hearing to determine whether to extend the TRO. At the hearing, Haberman called Jones a liar, a runaway, and an "out-of-control teenager," and he reported that she had recently received an "F" at school. Id. ¶ 49, at 7. One of Jones' school counselors, who also attended the hearing, directly refuted Haberman's attack, and said that the only reason Jones' grades had suffered was because of the recent chaos in her life. See id. ¶ 51, at 7.

That night, Jones contacted attorneys who advised her that she could not be lawfully arrested if she did not return to her father's, and Jones went to a youth shelter. See id. ¶ 54, at 8. Her attorney then notified the Sandoval County Sheriff's Department, and later the Sandoval County Attorney, that no further action should be taken against Jones. See id. ¶¶ 54, 61, at 8-9.

Jones' Complaint contains three separate counts. Only one of those counts is at issue in this motion. In Count I, Jones alleges a violation of her Fourth Amendment right to be free from unreasonable seizure. Jones alleges that Haberman's and Hunt's "detention and harassment" was without reasonable suspicion or probable cause and otherwise violated her Fourth Amendment rights. See id. ¶¶ 67-69, at 9-10.[1] Count II of Jones' Complaint contains a claim for supervisory liability against Sandoval County. See id. ¶¶ 71-72, at 10. In Count III, Jones alleges that her "detention . . . was not justified or privileged under state law, and constituted false imprisonment." Id. ¶ 74, at 10. Counts II and III are not at issue in this motion.

## LEGAL STANDARD FOR MOTION TO DISMISS
## BASED ON QUALIFIED IMMUNITY

When deciding a rule 12(b)(6) motion to dismiss for failure to state a claim on which relief

---

[1] The Court's ruling on this motion is limited to Count I of the Complaint as it pertains to Defendant Haberman. This Memorandum Opinion and Order is not intended to address or decide any issues with respect to Defendant Hunt.

may be granted, the Court must liberally construe the pleadings; take the well-pleaded facts as true; and draw all reasonable inferences in the plaintiff's favor.  See Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984).  The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims.  See Ruiz v. McDonnell, 299 F.3d 1173, 1181 (10th Cir. 2002)(citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982)).  A court may dismiss a claim only if it appears to a certainty that the plaintiff can prove no set of facts that would entitle the plaintiff to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Swanson v. Bixler, 750 F.2d at 813.

At the rule 12(b)(6) stage, qualified immunity protects government officials performing discretionary functions from individual liability unless, on the face of the complaint, the plaintiff alleges the violation of clearly established statutory or constitutional rights of which a reasonable person would have known.  See Harlow v. Fitzgerald, 457 U.S. at 818.  The qualified immunity analysis consists of two sequential steps.  "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation."  Hope v. Pelzer, 536 U.S. 730, 736 (2002)(citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  If the Court concludes that the plaintiff has alleged constitutionally impermissible conduct, the defendant "may nevertheless be shielded from liability for civil damages if [his] actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Hope v. Pelzer, 536 U.S. at 739 (quoting Harlow v. Fitzgerald, 457 U.S. at 818).     T h e purpose of the "clearly established" requirement is to give "fair warning" to a defendant of conduct that is unconstitutional.  See Hope v. Pelzer, 536 U.S. at 739-40.

For a constitutional right to be clearly established, its contours "must be sufficiently

> clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

Id. at 139 (citations and internal quotation marks omitted). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." Id. at 741. Earlier cases involving "fundamentally similar" or "materially similar" facts "are not necessary to" a finding that the law was clearly established. Id. See United States v. Lanier, 520 U.S. 259, 271 (1997)("[G]eneral statements of the law are not inherently incapable of giving fair and clear warning[.]").

## LEGAL ANALYSIS

Accepting all of Jones' factual allegations as true, and drawing all inferences in her favor, the Court concludes that Jones has failed to state a claim under 42 U.S.C. § 1983 against Haberman for violation of her Fourth Amendment right to be free from unreasonable seizure. The facts alleged do not amount to a "seizure" for Fourth Amendment purposes. Furthermore, because Haberman did not violate clearly established law, he is entitled to qualified immunity. Accordingly, the Court will grant Haberman's motion to dismiss.

## I.    THE ALLEGATIONS IN JONES' COMPLAINT ARE INSUFFICIENT TO ESTABLISH A CONSTITUTIONAL VIOLATION.

In qualified immunity analysis, courts must first consider whether a plaintiff's allegations, if true, establish a constitutional violation. See Hope v. Pelzer, 536 U.S. at 736. Jones, in her Complaint, alleges that Haberman's conduct constituted an unreasonable seizure of her person in violation of the Fourth Amendment. See Complaint ¶¶ 68-69, at 9-10. Haberman contends that Jones cannot establish an unconstitutional seizure because she does not allege facts sufficient to

-6-

demonstrate that a reasonable person would not have felt free to leave.  After reviewing the facts alleged in Jones' Complaint, along with the standards set forth by the United States Court of Appeals for the Tenth Circuit in United States v. Hill, 199 F.3d 1143, 1147-48 (10th Cir. 1999), the Court finds that, as a matter of law, Haberman did not "seize" Jones within the meaning of the Fourth Amendment.

### A.    THE FOURTH AMENDMENT APPLIES TO HABERMAN.

Because the Fourth Amendment's basic purpose "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials," the Amendment's prohibition against unreasonable searches and seizures protects against illegal intrusions during civil, as well as criminal, investigations by the government.  See Marshall v. Barlow's, Inc., 436 U.S. 307, 312-13 (1978).  State social workers are subject to the Fourth Amendment's requirements: "There is no 'social worker' exception to the Fourth Amendment."  Dubbs v. Head Start, Inc., 336 F.3d 1194, 1205 (10th Cir. 2003).  See Doe v. Heck, 327 F.3d 492, 509 (7th Cir. 2003) ("[T]he strictures of the Fourth Amendment apply to child welfare workers, as well as all other governmental employees.").  For purposes of this motion, Haberman does not dispute that he is subject to Fourth Amendment prohibitions.

### B.    THE ALLEGATIONS OF THE COMPLAINT DO NOT ESTABLISH THAT HABERMAN SEIZED JONES WITHIN THE MEANING OF THE FOURTH AMENDMENT.

The Fourth Amendment, applied to the states through the Fourteenth Amendment's due process clause, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"  U.S. Const. Amend. IV.  Generally, a person is seized within the meaning of the Fourth Amendment when "a reasonable person

would believe that he or she is not 'free to leave.'" <u>Florida v. Bostick</u>, 501 U.S. 429, 435 (1991).[2]
"A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors
have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a
citizen[.]'" <u>Graham v. Connor</u>, 490 U.S. 386, 395 n. 10 (1989)(quoting <u>Terry v. Ohio</u>, 392 U.S. 1,
20 n. 16 (1968)).

     The determination whether a reasonable person would have believed he or she was free to
leave is affected by the person's age.  Where the person being questioned is a child, the Court should
consider the circumstances from a reasonable child's perspective.  <u>See United States v. Little</u>, 18 F.3d
1499, 1505 n. 6 (10th Cir. 1994)(en banc)(distinguishing "[c]haracteristics such as whether the person
being questioned is a child or an adult" from the general rule that the particular personal traits or
subjective state of mind of the defendant are irrelevant to the objective "reasonable person" test). For
example, the United States Court of Appeals for the Seventh Circuit in <u>Doe v. Heck</u> considered a
Fourth Amendment challenge against the defendant social workers and concluded that, where the
defendants had questioned the eleven-year-old child in an otherwise empty church nursery, "with the
uniformed police officer present, for twenty minutes about intimate details of his family life . . . . [the
child] was 'seized' within the meaning of the Fourth Amendment because no <u>reasonable child</u> would
have believed that he was free to leave the nursery." <u>Doe v. Heck</u>, 327 F.3d at 510 (emphasis added).

---

     [2] In <u>Florida v. Bostick</u>, the Supreme Court of the United States stated that, in situations where a
person's freedom of movement is restricted by a factor independent of police conduct, such as being on a bus
or in the workplace, "the appropriate inquiry is whether a reasonable person would feel free to decline the
officers' requests or otherwise terminate the encounter." <u>Id.</u> at 436.  "We have said before that the crucial test
is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would
have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about
his business." <u>Id.</u> at 437 (citation and internal quotation marks omitted).

This case presents a somewhat unique set of facts in that it involves a social worker's alleged seizure of a child in a public school setting by questioning or interrogating the child.[3]  This scenario is a middle ground between the more frequently litigated situations in which school officials detain and question a child for the purpose of maintaining or restoring order in the school and those in which a social worker enters a home or school to remove a child because of abuse or neglect.  In the former cases, the Tenth Circuit has stated that "the same considerations which moved the Supreme Court to apply a relaxed Fourth Amendment standard in cases involving school searches support applying the same standard in school seizure cases."  Edwards v. Rees, 883 F2d 882, 884 (10th Cir. 1989)(emphasis added).  In New Jersey v. T.L.O., 469 U.S. 325 (1985), the Supreme Court held, with respect to school searches:

> the accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search.

Id. at 341.  The Supreme Court went on to hold that a search of a student by a school official is reasonable if it is "justified at its inception," and "reasonably related in scope to the circumstances which justified the interference in the first place[.]"  Id.

In cases involving the removal of a child, the Tenth Circuit has stated that, generally, social workers must obtain a warrant before entering a private home to remove a child.  See Roska v.

---

[3] Haberman contends that, to the extent that Jones is attempting to premise her claim for constitutional liability against him on Hunt's conduct, Haberman is entitled to qualified immunity because he cannot be liable for restraints that a third party imposes.  The Court does not believe that Jones' Complaint attempts to state a claim against Haberman based on Hunt's actions.  The Complaint alleges that Haberman fully participated in the detention, the harassment, the threats, and the intimidation.  See Complaint ¶ 43, at 6.  Accordingly, the Court will evaluate Haberman's motion to dismiss based upon his direct and active role in the alleged restraint.

Peterson, 328 F.3d 1230, 1242 (10th Cir. 2003)("We find no special need that renders the warrant requirement impracticable when social workers enter a home to remove a child, absent exigent circumstances.").  "Exigent circumstances exist when . . . law enforcement officers . . . have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others[.]"  Id. at 1240.  "Simply put, unless the child is in imminent danger, there is no reason that it is impracticable to obtain a warrant before social workers remove a child from the home."  Id. at 1242.  Courts have applied the same rule to cases in which social workers removed a child from a school, rather than from the home.  See Tenenbaum v. Williams, 193 F.3d 581, 593-94 (2nd Cir. 1999).

In this case, Jones does not allege that Haberman entered her home or that he removed her from the school without parental consent or a court order.  Rather, Jones alleges that Haberman "seized" her by engaging in an interrogation style encounter on public school grounds.  She asserts that Haberman's conduct was harassing, belittling, threatening, and intimidating.  See Complaint ¶ 40, at 6.  This conduct occurred over a period of several hours in a counselor's office at Jones' high school.  Haberman is correct that Jones' Complaint does not specifically allege that she was not free to leave.  That does not mean, however, that her Fourth Amendment claim necessarily fails.  Similarly, Jones does not allege that Haberman physically restrained her from leaving the counselor's office.  Physical restraint, however, is not necessary to establish a seizure.  It is sufficient that a government official restrain the liberty of a citizen "by means of physical force or show of authority."  Graham v. Connor, 490 U.S. at 395 n. 10 (emphasis added).

Jones asserts that the seizure occurred immediately when Haberman and Hunt entered the counselor's office.  See Transcript of Motion Proceedings at 21:23 to 22:6 (October 10,

2003)("Transcript").[4]  Jones alleges that she was "terrified of Hunt and Haberman, and did not even consider challenging them for fear that Hunt would follow through with his threats to arrest and throw her in jail."  Complaint ¶ 44, at 6.  Jones argues that, under the circumstances of Haberman's detention of her in this case, a reasonable sixteen year-old would not have felt or believed that she was free to leave.

Jones relies on United States v. Hill, for the factors a court should consider in determining whether a seizure occurred.

> We have identified various factors relevant to whether a reasonable person would not feel free to terminate the encounter with police: the threatening presence of several officers; the brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged retention of a person's personal effects such as identification and plane or bus tickets; a request to accompany the officer to the station; interaction in a nonpublic place or a small, enclosed place; and absence of other members of the public.

199 F.3d at 1147-48 (citation omitted).  The Tenth Circuit has "'steadfastly refused to view any one of these factors as dispositive.'"  Id. at 1148 (quoting United States v. Glass, 128 F.3d 1398, 1406 (10th Cir.1997)).  While some of these factors are present in this case, some are not.  Indeed, more are lacking than present.  In any case, the Court finds that the consideration of these factors as a whole leads to the conclusion that Haberman did not "seize" Jones within the meaning of the Fourth Amendment.

In this case, the interaction did involve two officials.  Both Haberman and Hunt were present.  In light of Jones' allegation that she was "terrified of Hunt and Haberman," it is reasonable to infer that their presence was threatening.  Complaint ¶ 44, at 6.  The Complaint contains allegations from

---

[4] The Court's citations to the transcript refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

which the Court can infer that Haberman used "aggressive language . . . indicating that compliance with [his request was] compulsory[.]"  <u>United States v. Hill</u>, 199 F.3d at 1247-48.  Any compliance Haberman demanded, however, concerned Jones' future living arrangements and did not concern an alleged inability to leave the counselor's office at that moment.  Indeed, Haberman's statements that, if Jones did certain things, she <u>would</u> be arrested would have implied to a reasonable person that Jones was not then under arrest.

Jones does not allege that Haberman (or Hunt) brandished a gun.  There is no allegation that Haberman touched Jones, that he took possession of any personal effects, or that he requested that Jones accompany him to another location.  Moreover, the interaction occurred in a public place, Jones' high school.  Specifically, it occurred in a counselor's office, and, at least in part, in the presence of a school counselor.  Although the office may be a small and enclosed place, Jones went there voluntarily.  <u>See</u> Complaint ¶¶ 37-38, at 5-6.  She did not leave when Haberman and Hunt first entered the office, even though the school counselor was present at that time.

Thus, after consideration of the factors set forth in <u>United States v. Hill</u>, the Court does not believe that Haberman "seized" Jones within the meaning of the Fourth Amendment.  While Haberman's presence and conduct may have been intimidating to Jones, he did not behave in a way that would make a reasonable 16 year old feel that he or she was not free to leave.  The Court does not believe that a seizure occurred immediately when Haberman and Hunt entered the office.  There does not appear to be another point in time when the interaction became a seizure.  Haberman did not threaten to have Jones arrested at that time.  His threats related to Jones' future conduct.  The interaction took place in a public school, at least partially during a time when others were present.  While Haberman's conduct may have been inappropriate under the circumstances, it does not rise to

-12-

the level of a Fourth Amendment violation.[5]   The Fourth Amendment standard is not whether

Haberman was mean to Jones, but whether he restrained her liberty by means of physical force or a

show of authority.  See Graham v. Connor, 490 U.S. at 395 n.10.  Based on these factors, the Court

finds that no seizure by Haberman occurred.

Jones also argues that the Seventh Circuit's opinion in Doe v. Heck suggests that a child is

seized by social workers within the meaning of the Fourth Amendment when questioned in the

presence of a uniformed police officer.  That case, however, concerned a detention at a private, as

opposed to a public school.  See Doe v. Heck, 327 F.3d at 514 ("The key difference between the

searches at issue in Darryl H. [v. Coler, 801 F.2d 893, 896-97 (7th Cir.1986)] and Landstrom [v.

Illinois Dept. of Children & Family Servs., 892 F.2d 670, 671-72 (7th Cir.1990)], and the search and

seizure in this case, is that the searches in Darryl H. and Landstrom took place on public school

grounds with the consent of public school officials. We made express mention of this distinction in

Brokaw v. Mercer County, 235 F.3d 1000 (7th Cir.2000), where we held that the seizure of a child

by a government official on private property--there, a home--is only reasonable if it is: (1) done

pursuant to a court order; (2) supported by probable cause; or (3) justified by exigent circumstances,

meaning that state officers had reason to believe that life or limb was in immediate jeopardy, and cited

our decisions in Darryl H. and Landstrom for the proposition that a lower standard of scrutiny applies

to searches and seizures conducted by the government on public school property.").  Moreover, the

facts in Doe v. Heck involved a situation where an eleven-year-old boy was removed from class and

---

[5] Jones alleges that the seizure occurred immediately when Hunt and Haberman entered the counselor's office because they arrived with an improper purpose. See Transcript at 22:2-6. To the extent that Haberman had an improper purpose, that factor would be relevant to the inquiry whether a seizure was unreasonable; it does not shed light on the question whether a seizure occurred.

escorted into an otherwise empty nursery for questioning.  See id. at 510.  This case, on the other

hand, involves an interaction in a counselor's office where Jones had gone voluntarily.  Thus, Doe

v. Heck does not fully support the conclusion that Haberman seized Jones.

The Court is mindful of the difficult task that social workers have in investigating and

determining child abuse.  Often, their work takes them to public schools.  The Court is reluctant to

quickly find interrogations of a teenager on public school grounds to be a seizure or an arrest,

requiring reasonable suspicion, probable cause, or a warrant.  The Court believes that the "relaxed

Fourth Amendment standard" applies in such circumstances.  Edwards v. Rees, 883 F.2d at 884.

Something more than a difficult discussion must be present to turn the interrogation into a seizure

entitled to Fourth Amendment protection.  Here, the "something more" points away from a seizure:

no weapons, no physical touching, a counselor present at times, Jones came to the office voluntarily,

and discussion of an arrest related to future events.

Given the Seventh Circuit's language in Doe v. Heck, and the Tenth Circuit's statement in

Edwards v. Rees, the Court finds that Haberman's alleged interrogation of and threats against Jones

did not constitute a seizure.  The Court concludes that, under the circumstances,  Haberman's

conduct would not have communicated to a reasonable 16-year old person that she was not free to

leave.  Haberman is entitled to qualified immunity on the basis that Jones' allegations do not amount

to the violation of a constitutional right.

## II.    EVEN IF THE COURT ASSUMES THAT THE COMPLAINT ALLEGES A CONSTITUTIONAL VIOLATION, HABERMAN'S CONDUCT DID NOT VIOLATE LAW THAT WAS CLEARLY ESTABLISHED AT THE TIME.

The Court believes that Haberman is entitled to qualified immunity on the basis that Jones'

Complaint does not allege a constitutional violation.[6]  Even if the allegations did reach the level of a constitutional violation, however, the Court would still find that Haberman is entitled to qualified immunity because his conduct did not violate law that was clearly established at the time of the alleged detention.  Accordingly, the Court will grant Haberman's motion to dismiss.

Haberman submits that no law of this circuit, nor the clearly established weight of authority from other circuits, establishes that his conduct violated a constitutional right or that it was otherwise objectively unreasonable under the Fourth Amendment.  Haberman correctly points out that Doe v. Heck, the most factually similar case to this one, is a Seventh Circuit case issued several months after Haberman's alleged conduct in this case.  See, e.g., Anderson v. Creighton, 483 U.S. 635, 639 (stating that the applicable test is whether a reasonable official would have known his or her actions were unlawful "in light of the legal rules that were 'clearly established' at the time [the actions were] taken[.]").  Thus, while Doe v. Heck may inform the Court on the question whether a seizure occurred and if so whether it was reasonable, the Court should not take it into account with respect to the determination whether the law was clearly established.  If the case points in any direction, it demonstrates that the law was not clearly established in the Seventh Circuit, much less in New Mexico, at the time of this incident.

The Supreme Court has not required precise factual correlation between the then-existing law and the case at-hand.  See Hope v. Pelzer, 536 U.S. at 739-41.  While they are not required to anticipate developments in the law, "[i]t is incumbent upon government officials 'to relate established law to analogous factual settings.'"  Eastwood v. Department of Corrections of State of Okl., 846

_____

[6] Because the Court finds there was no seizure, it need not address whether any seizure was reasonable. For purposes of this decision, the Court assumes that, if there was a seizure, it was unreasonable.

F.2d 627, 630 (10th Cir. 1988)(quoting People of Three Mile Island v. Nuclear Regulatory Comm'rs,

747 F.2d 139, 144 (3d Cir.1984)).  Thus, the question is whether, based on the law existing in

January 2003, Haberman should have been on notice that his conduct violated the Fourth

Amendment.

  It has long been clearly established that the Fourth Amendment requires that a seizure be

reasonable.  See, e.g., United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975).  It was also clearly

established in January 2003 that the Fourth Amendment applies to social workers.  See Roska v.

Peterson, 304 F.3d 982, 996 (10th Cir. 2002)("Roska I")("Defendants also argue that the law was

unclear as to whether social workers performing their duties are covered by the Fourth Amendment's

warrant requirement.  We hold that they are and that the law was clearly established [in 1999]."),

opinion withdrawn on rehearing by Roska v. Peterson, 328 F.3d 1230 (10th Cir. 2003)("Roska II").

In pertinent part, Roska II departed from Roska I in its qualified immunity analysis, not in terms of

whether the law was clearly established, but rather in terms of the district court's conclusions

regarding the facts:

> [A]n objective, reasonable state social worker could have reasonably believed, based
> on the information the DCFS defendants possessed at the time of removal, that there
> was substantial cause to believe that there was a substantial danger to [the child's]
> health or safety and that [the child's] health or safety could not be protected without
> removing him from his parents' custody.

Roska II, 328 F.3d at 1250.  On that factual basis, the Tenth Circuit concluded that the defendants

were entitled to qualified immunity.  See id.

  In Doe v. Heck, the Seventh Circuit affirmed the district court's grant of qualified immunity

to the defendants on the ground that "at the time the defendant caseworkers conducted their search

of Greendale and seized John Doe Jr., a 'reasonable' Bureau caseworker would not have understood

his actions . . . to be unconstitutional[.]" Doe v. Heck, 327 F.3d at 516.  The Seventh Circuit went on to state the following: "At this juncture, however, we now make it clear that it is patently unconstitutional for governmental officials to search the premises of a private or parochial school and/or seize a child attending that school without a warrant or court order, probable cause, consent, or exigent circumstances." Id. at 517.  If anything, Doe v. Heck provides guidance that the law with respect to an alleged seizure at a public school by a social worker in the Tenth Circuit was not, and is still not, clearly established.

Although counsel do not rely on it, the Court found one case that discusses an alleged seizure by a social worker in a public school setting.  See Doe v. Bagan, 41 F.3d 571, 575 n.3 (10th Cir. 1994).  In Doe v. Bagan, the defendant social worker arranged to interview a nine-year old child who was suspected as being the perpetrator of sexual abuse on a younger child.  The social worker spoke with the child in the principal's office with the door closed for approximately ten minutes.  See id. at 574.  The Tenth Circuit did not decide the question whether the interview constituted a seizure, but apparently assumed it.  See id. at 575 n.3.  The court then went on to state that the seizure, if any, was reasonable, because it was justified at its inception and reasonably related in scope to the circumstances which originally justified the detention.  See id. at 575 n.3.

Jones has not presented the Court with authority in support of the proposition that Haberman should have been on notice that he might run afoul of the Fourth Amendment by going to a public school and questioning Jones about her future living arrangements in the manner he did.  Cases involving the removal of children from the home would not adequately inform Haberman's conduct.  Neither would cases involving seizures in private schools.  And Doe v. Bagan does not lead to the conclusion that Haberman violated clearly established law; that case involved a much younger child,

-17-

who was being questioned about criminal conduct he might have committed.  Because the Tenth Circuit assumed a seizure without analyzing why the circumstances required that conclusion, Haberman did not have guidance whether he was crossing over into unconstitutional activity by meeting with Jones at her high school.

The Court must consider the circumstances of the alleged seizure, Haberman's conduct, and his role as a social worker.  The prevailing authority does not yet support Jones' contention that Haberman should have known, based on clearly established law, that he could not meet with Jones at her school under these circumstances.  This is not a case in which Jones is alleging that Haberman forcibly entered and removed her from her home.  At the time of the conduct alleged herein, a reasonable social worker could have believed that his conduct -- interrogating a 16-year old at a public school -- was not a seizure in light of clearly established law.  Accordingly, the Court finds that Haberman is entitled to qualified immunity and will grant the motion to dismiss on that basis.

**IT IS ORDERED** that Defendant Alfred Haberman's Motion to Dismiss on the Basis of Qualified Immunity is granted.  Count I of the First Amended Complaint, stating a Fourth Amendment claim for unreasonable seizure against Alfred Haberman, is dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Jane Gagne
Albuquerque, New Mexico

     *Attorney for Plaintiff*

Jonlyn M. Martinez
Slease & Martinez, P.A.
Albuquerque, New Mexico

     *Attorneys for County Defendants*

Kevin M. Brown
Daniel J. Macke
Brown & German
Albuquerque, New Mexico

     *Attorneys for Defendant Alfred Haberman*